PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

December 8, 2006

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

RICHARD MICHAEL CARLSON and PEARL KAYE CARLSON,

Debtors.

Case No. 06-40402

**MEMORANDUM DECISION**
**NOT FOR PUBLICATION**

This matter came on for hearing on November 7, 2006, on the Objection to Claim of Vanderbilt Mortgage Finance (Vanderbilt) filed by Richard Michael Carlson and Pearl Kaye Carlson (Debtors). Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

**FINDINGS OF FACT**

On March 10, 2006, the Debtors filed bankruptcy under Title 11, Chapter 13. On March 27, 2006, Vanderbilt filed a proof of claim in the amount of $59,516.56, alleging a security interest in a 1997 Fleetwood Waverly Crest manufactured home (Manufactured Home). On October 24, 2006, Vanderbilt filed an amended proof of claim in the amount of $38,200.00. Vanderbilt again amended its Proof of Claim on November 2, 2006, setting forth a total claim of $59,516.56: $38,200.00 secured and $21,316.56 unsecured.

MEMORANDUM DECISION - 1

The Debtors filed an objection to Vanderbilt's proof of claim. The Debtors alleged that the Manufactured Home has a value of $33,563.77 without deducting the costs to move the Manufactured Home, but argued that the selling price, if sold by a retail merchant, would be reduced by the moving costs. While the Debtors are the owners of the Manufactured Home, the real property is owned by Richard Carlson's father, Eino Carlson. It is not disputed that this real property is subject to a conditional land permit, so that because Eino Carlson passed away post hearing, there is longer a legal basis for the Manufactured Home to remain on the real property, and it will have to be moved.

The Debtors argue that the costs of relocating the Manufactured Home, which are projected to be $11,747.32, should be deducted when determining Vanderbilt's secured claim. Based on the N.A.D.A. Appraisal Guides submitted by the Debtors, the value of the Manufactured Home, and therefore Vanderbilt's secured claim, is $21,816.45 after deducting moving costs.

The Court initially heard argument on the Debtors' objection to claim on October 3, 2006. Thereafter, the parties submitted briefing on the issue of whether the costs to move the Manufactured Home should be deducted in establishing the value of Vanderbilt's secured claim, pursuant to 11 U.S.C. § 506(a)(2). The Court considered additional oral argument on November 7, 2006.

**CONCLUSIONS OF LAW AND DISCUSSION**

This case was filed on March 10, 2006, and thus is controlled by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). The governing statute, 11 U.S.C. § 506(a), was amended to add a new subparagraph (2), as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined

MEMORANDUM DECISION - 2

> based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

The parties agree that the Manufactured Home was acquired for personal, family, or household purposes.

Based on the plain language of the statute, the issue before the Court is what price would a retail merchant charge for property the same kind as the Manufactured Home considering its age and condition at the time value is determined? At least one bankruptcy court has interpreted the controlling sentence of 11 U.S.C. § 506(a)(2) precisely as it is written: that a retail value or price is the appropriate standard by which to determine replacement value. In re Eddins, --B.R.--, 2006 WL 3257142 (Bankr. W.D. Okla. Oct. 17, 2006). The Court is unaware of any case law that further examines the definition of retail value or price. Additionally, neither the Bankruptcy Code, nor the legislative history,[1] provides a definition for "retail merchant."

Black's Law Dictionary defines the noun "retail" as, "[a] sale for final consumption in contrast to a sale for further sale or processing (i.e. wholesale). A sale to the ultimate consumer." Black's Law Dictionary 1315 (6th ed. 1990). Black's Law Dictionary defines a "merchant" as "[o]ne who is engaged in the purchase and sale of goods; a trafficker; a retailer; a trader. Term commonly refers to person who purchases goods at wholesale for resale at retail . . . ." Black's Law Dictionary 987 (6th ed. 1990).

---

[1] The legislative history of BAPCPA, including 11 U.S.C. § 506(a)(2), is located at House Report No. 109-31, pt. 1, 109th Cong., 1st Sess. 83 (2005).

MEMORANDUM DECISION - 3

After filing its original proof of claim, Vanderbilt had the Manufactured Home appraised at a market value of $38,226. Vanderbilt contends that a retail merchant would not deduct the cost of relocating a manufactured home in determining its market value or price. Vanderbilt, however, has provided no authority to support its position, nor has it provided the Court a copy of its appraisal.

The Debtors contend that having to move the Manufactured Home off the current real property unquestionably affects its overall value. The Debtors have provided no legal or evidentiary authority to support this position.

The Debtors, however, have provided the Court a copy of the N.A.D.A. Appraisal Guides, on which they relied in determining the value of the Manufactured Home. This Appraisal Guide is of some assistance to the Court since it takes into account the size and condition of the Manufactured Home, as required by 11 U.S.C. § 506(a)(2). More importantly, it identifies the "Total Adjusted (<u>Retail</u>) Value of Home and Optional Equipment," which is listed as $33,563.77. (emphasis added). It then provides a "Wholesale Value," and specifies this as "Moved for Resale," which is listed as $21,816.45. Based on this Appraisal Guide, the "retail value" clearly is distinct and different from the "moved for resale" wholesale value, and the "retail value" does <u>not</u> take into consideration moving costs. Rather, deducting the moving costs from the retail value results in the "wholesale value." The Debtors' own appraisal appears to establish that retail value, which this Court must consider in determining secured value pursuant to § 506(a)(2), does <u>not</u> take into account projected moving costs of the Manufactured Home. Utilizing the N.A.D.A. retail value for purposes of § 506(a)(2) is consistent with the approach taken by the court in <u>Eddins</u>, --B.R.--, 2006 WL 3257142 at *3.

MEMORANDUM DECISION - 4

This result also is supported by a pre-BAPCPA Chapter 13 case that decided the proper method of valuing a mobile home under 11 U.S.C. § 506(a). In re Rowland, 166 B.R. 172 (Bankr. N.D. Fla. 1994). While the court's ultimate decision regarding the proper valuation method is not relevant post-BAPCPA, the analysis of the valuation methods is relevant. In Rowland, the debtors argued that the "moved to resale" wholesale value was the best standard for valuation. In re Rowland, 166 B.R. at 174. The court explained that under the "moved to resale" valuation method, a wholesale price is reached by applying a factor to the retail value of the mobile home. This factor takes into consideration dealer commissions, profit, and expenses of moving the mobile home to the sales lot, and then moving it again to the retail purchaser's lot. In re Rowland, 166 B.R. at 174. Thus, based on the explanation set forth in Rowland, the retail value does not include consideration of moving costs. Rather, the wholesale value is determined by deducting certain costs, like moving costs, from the retail value.

Accordingly, on the issue of moving costs, the Debtors' objection to claim is denied.

DATED: December 8, 2006

*Paul B. Snyder*

Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 5